Next on calendar is case number 25-2885, Dustin Dean v. City of Tacoma et al.  What force should the officers have applied? What would have been appropriate in your view of the case and the law? Thank you, Judge. I mean, from my perspective, viewing the evidence in the light and most favorable of the plaintiff, as we must at this stage of the proceedings, at the beginning of this incident, my client is unarmed. He has not actually committed any crime and he's not obstructing the officers in any investigation at the time they forcibly put hands on him. And he's not and he's zero threat to the officers because he actually has his back turned to them as he's trying to close the door. So I think based on those facts, unarmed, has not committed a crime, is not obstructing investigation, is zero threat to them. That would point to any significant force. Your description sounds like your argument is that he was passive. Yes. Would that accurately describe his behavior? I think so, Judge. Ever hold his hands up? I don't think he had the opportunity to. Answer to my question is no. No, he did not. That is correct, Judge Hawkins.  The answer to that question is correct. And again, I think that is a point of the ultimate Fourth Amendment reasonableness inquiry that a jury can look at about whether that's reasonable and whether when my client is holding onto this banister that we see on the video as two officers are trying to choke him and drag him down the stairs. Whether he's trying to resist arrest, whether he's trying to evade arrest, or whether he's just trying to keep himself from being injured. Because it just seems logical to me that if you're in that situation and the officers are having to give you any explanation why they're there and they're dragging down the stairs. If he just lets go, his face is going to he's going to face plant right on the stairs and suffer a serious head injury. So again, I don't think he's it's not a case where it's important in the Graham analysis. It's not a case where he's trying to escape or evade arrest. We hear him on the video calling. You say he's not evading arrest at that point. I resisting and grasping the rail. I think I think the district court correctly decided that was passive resistance. And if if what we see on the video is passive resistance, I don't think I think the officers nontrivial force that they used it exceeds that allowed by the Fourth Amendment. And if nothing else, it is a it is a jury issue. There are so many questions of fact in this case. It is not it is not a good candidate for summary adjudication. There is credibility issues galore and a jury. Ultimately, as as the court has said many times, excessive force typically are not good candidates for summary judgment because the reasonables inquiry is often appropriate for a jury. And there are so many credibility issues. And we see that, I think, particularly in this case where, again, we have we don't just have two police officers telling different stories. And my client and the female witness, his girlfriend at the time. But even some of those people are telling different stories at different times. We see that with the girlfriend. But I don't mean to cut you off here, but you need a win on prong to have qualified immunity. And I think the panel is focused on that. And you pointed to the Valenzuela case, which I don't think you cited in your brief, but I just read the facts now. It seems, as Judge Matsumoto pointed out, very, very different. There were multiple chokeholds applied. Valenzuela turned purple, screamed, I can't breathe. Help me. The officer then tased Valenzuela. Officer Chase Valenzuela pulling him to the ground. Officers repeatedly tased Valenzuela, who begged for them to stop it. More chokeholds. Gasping for air. And ultimately, Valenzuela fell into a coma and died eight days later in hospital. Is that remotely what happened here in this case? Thank you, Judge. It is more severe, obviously. Obviously, we would concede that. But from plaintiff's perspective, what's important there is it is a case where specifically this court was noting that multiple chokeholds where it's where there's evidence that someone's breathing is being cut off. It is a significant use of force. Counsel, you also cited Hunter, but that case is unpublished, right? That is correct, sir. Yes, that is an unpublished case from 2020. If I if I still have a couple of minutes, as far as as far as, again, this question of clearly established, I think the most offsited case from this circuit on the chokehold issue is to my mobile. A 2009 case which held that time of 2014 incident in the state of Nevada. The police officer's use of a chokehold on a suspect violated the Fourth Amendment. And one other case that I think is probably worth looking at is Bernard vs. Nevada police officers actions using a choke using a chokehold on a suspect violated the Fourth Amendment. All the obviously none of these cases are 100 percent apples to apples comparisons. I don't think that is precisely what's required by the qualified immunity analysis. And I think we have to look at based on based on Supreme Court precedent, including Barnes v. Felix, a 2025 case of the U.S. Supreme Court. We look at the totality of the circumstances. So in this case, again, I think we have to look at the beginning of the incident. How did this all start? Where, again, from plaintiff's perspective, viewing the evidence as we should at this stage in proceedings, he's unarmed, has not committed a crime, is not a threat and has not obstructed. The investigation, because they haven't given him any commands or orders to obey or not obey. So under those circumstances, again, I don't think you have to rise to the level of tasing some multiple times or seeking a police dog on them to violate the Fourth Amendment. Under those circumstances, I think this level of force where you're not giving it, not giving a person any opportunity to comply before you put your hands on them. I think that violates the Fourth Amendment at the outset of the incident. I think the Barnard v. Thiebaud court recognized that police officers who confront actual or perceived resistance are only permitted to use an amount of force that is reasonable to overcome that resistance. So we do have resistance here. The used force and your contention is that the amount of force was not reasonable under the circumstances. Correct. And that they should have been aware that that degree of force would not be reasonable. Correct. Correct. With with the most egregious use of force, obviously, being what we see on the video of what from plans perspective or to chokeholds by Officer Rankin, which, you know, is severe use of force is arguably an attempt to use deadly force. You know, as this is happening to as it is happening, Mr. Dean thinks he's about to die. And that is why you hear him on the video calling out for help, calling out for a supervisor. Again, he is in a situation where he is trying to get away from the police. He's actually calling essentially calling for more police to come to the scene because, you know, in his layperson understanding of what's happening here, he's clearly the victim of police brutality. And he's hoping that a more senior officer of the police department arrives on scene and assist him. Thank you, counsel. Thank you. If there's no further questions, I'll rest on the briefs. I thank you very much. All of you for this opportunity. Thank you. Just briefly regarding the undisputed facts, it's undisputed that Mr. Dean refused medical attention at the scene and that the only physical injury that he suffered was apparently a bloody lip. And when evaluating the momentary restriction of his breathing when Officer Rankin is trying to pull him away from the railing, we would submit that because of the threat that was posed by the physical positioning of Mr. Dean next to the railing, that Officer Rankin was permitted under those circumstances to do whatever he could to get him off the railing. And the fact is that this was probably no more than 10 seconds of restricting his breathing. That is the most intrusive use of force here. But under these circumstances, it was not clearly established based on the case law that governs that Officer Rankin could not do what he needed to do to get Mr. Dean off of the railing so that they could safely handcuff him. We would submit that qualified immunity should be applied to both officers and that the trial court's decision should be reversed. Thank you. Thank you, counsel. The case is submitted.
judges: HAWKINS, TUNG, Matsumoto